**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

THERESA CASTILLO SMOLL,    )  NO. EDCV 08-00846 SS
                    )
        Plaintiff,  )
                    )  **MEMORANDUM DECISION AND ORDER**
     v.            )
                    )
MICHAEL J. ASTRUE,      )
Commissioner of the Social  )
Security Administration,   )
                    )
        Defendant.  )
_____)

**INTRODUCTION**

    Theresa Castillo Smoll ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her application for Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. This matter is before the Court on the parties' Joint Stipulation ("Jt. Stip.") filed on March 18, 2009. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

**PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on August 4, 2003. (Administrative Record ("AR") 61-63). Plaintiff asserted disability due to a work-related injury of her spine and wrists. Plaintiff claimed that her conditions began on April 18, 2002. (AR 61).

The Agency denied benefits on initial examination and on reconsideration. (AR 48-51; 53-57). Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 58). A hearing went forward before ALJ Charles E. Stevenson on August 3, 2005. (AR 414-44). The ALJ denied benefits on April 21, 2006. (AR 18-26). Plaintiff requested Appeals Council review on June 6, 2006. The Appeals Council denied Plaintiff's request for review on July 3, 2006. (AR 5). Plaintiff filed a complaint in the Central District of California seeking review of the Commissioner's decision.[1] On May 18, 2007, the parties stipulated to a remand because the record contained medical records that did not belong to Plaintiff. (AR 466; 478-79). The Appeals Council remanded the case back to the ALJ. (AR 468-69).

Accordingly, ALJ Stevenson held a supplemental hearing on April 9, 2008. (AR 547-60). The ALJ denied Plaintiff benefits on April 16, 2008. (AR 448). Plaintiff then commenced the present action on June 24, 2008.

---

[1] The original case number was EDCV 06-00899 SS.

2

**FACTUAL HISTORY**

**A.    Generally**

Plaintiff was born on December 30, 1968.  (AR 416).  Plaintiff achieved a high school diploma and received an associate degree.  (Id.). Plaintiff worked as a data entry clerk at Kaiser Permanente until April 2002.  (AR 421).  Plaintiff has been working for the Ontario Montclair school district since May 2005.  (AR 418-19; 554).  Plaintiff began as a substitute employee, but has since become a permanent employee.  (AR 419, 437; 555).  As a result, Plaintiff now seeks benefits for a closed period of disability from April 18, 2002 to May 5, 2005.  (AR 448).

**B.    Treating Physician**

At the time of the hearings, Plaintiff's treating physician was Charles Sadler, M.D.  (AR 70, 82).  On April 18, 2002, Dr. Sadler diagnosed Plaintiff with a cervical spine strain and bilateral wrist and hand strain.  (AR 254).  On May 22, 2002, Plaintiff underwent a cervical spine MRI.  (AR 152-53).  The MRI showed a one millimeter central bulge visible at C4-5, C5-6, and C-6-7.  (AR 152).  On May 14, 2002, an electromyograhpy of Plaintiff's upper extremities was mildly abnormal and indicated probable right ulnar nerve neuropathy at the cubital tunnel.  (AR 150).  In a report dated June 26, 2003, Dr. Sadler precluded Plaintiff from "very heavy work" because of her neck injury.  (AR 180).  Dr. Sadler also precluded Plaintiff from heavy lifting, pushing or pulling, repetitive or prolonged grasping and gripping, fine manipulation and prolonged or repetitive keyboarding.  (Id.).

3

Dr. Michael J. Patzakis, M.D., examined Plaintiff as an agreed medical examiner pursuant to a workers' compensation claim Plaintiff brought against her former employer. (AR 374-381). On October 28, 2003, Dr. Patzakis diagnosed Plaintiff with status post ulnar nerve transfer anteriorly of the right elbow, chronic cervical sprain with minimal disc bulging one millimeter per MRI multiple levels and mild clinical carpal tunnel syndrome in the left wrist. (AR 378). Dr. Patzakis found that Plaintiff's condition was permanent and stationary. Dr. Patzakis opined that Plaintiff "should use a computer intermittently and not more than 3 hours a day for a short period each time." (AR 380.) Dr. Patzakis noted that:

> [Plaintiff] is precluded from very heavy work in regards to her neck. In regards to her left hand, she is precluded from prolonged or repetitive grasping, from using any hand tools on a repetitive basis, and from prolonged or repetitive data input and typing with her left hand. No restrictions are necessary for her right upper extremity. A reasonable grip strength loss would be approximately 25% of her left hand.

(AR 380).

4

1  **C.    Consultative Physician**

2

3      Dr. J. Pierce Conaty, M.D., an orthopedic consultant, examined

4  Plaintiff at the request of the Department of Social Services ("DSS")

5  on March 2, 2004.  (AR 320-23).  Dr. Conaty found that Plaintiff had no

6  evidence of cervical spine pathology and diagnosed her with status

7  postoperative cubital tunnel release in her right wrist and suggestion

8  of carpal tunnel syndrom on her left.  (AR 323).  Dr. Conaty set forth

9  the following limitations:

10

11          Lifting and carrying would be 50 pounds occasionally and

12      25 pounds frequently, standing and walking for six hours in

13      an eight-hour workday, and sitting for six hours in an eight-

14      hour workday.  Reaching in all directions as it relates to

15      the right upper extremity would be slightly limited.  There

16      are no manipulative limitations as it relates to gross or

17      fine manipulation bilaterally.

18

19  (AR 323).

20

21      On October 12, 2005, the DSS also ordered a psychiatric evaluation

22  of Plaintiff.  (AR 394-401).  The report notes that Plaintiff was mildly

23  depressed and anxious, but concludes that "claimant's psychiatric

24  limitations are none to mild."  (AR 399-400).  The report indicates that

25  Plaintiff's daily activities included taking her child to school and

26  performing household chores.  (AR 399).  On March 22, 2004, The

27  Disability Determination Service ("DDS") completed a Residual Functional

28  Capacity ("RFC") assessment regarding Plaintiff's physical disabilities.

1  (AR 325-32).   The DDS found that Plaintiff could perform "medium work
2  without . . . limitations."   (AR 332).

3

4  **D.   <u>Plaintiff's Testimony</u>**

5

6        At the 2006 hearing, Plaintiff testified that she suffered from
7  neck pain, headaches and pain in her hands.  (AR 421-22).   Plaintiff
8  described the pain as radiating from her neck and shooting up her arms
9  through her elbows.  (<u>Id.</u>).  Plaintiff stated that the headaches caused
10 her to have to lay down for about two hours.  (AR 424).   Plaintiff
11 stated that surgery on her right elbow had relieved much of the pain in
12 her right hand, but that numbness and tingling persisted.  (AR 426).
13 Plaintiff noted that the pain in her left hand continued and that she
14 experienced swelling in that hand.  (AR 427).  Plaintiff testified that
15 the pain in her hands was so intense that she could not pick up or hold
16 objects.   (AR 430).   Plaintiff noted that she had "tremendous"
17 difficulty sleeping because of her conditions.  (AR 428).   Plaintiff
18 testified that the pain and tension in her neck at times required the
19 use of cold packs and therapeutic pillows.  (<u>Id.</u>).  Plaintiff stated
20 that her impairments prevented her from interacting with her child.  (AR
21 432).   Plaintiff noted that the impairments required her husband to
22 perform household tasks such as cooking.  (AR 433).

23

24        At the 2008 supplemental hearing, Plaintiff testified that the she
25 was unable to perform basic functions such as cooking or laundry.  (AR
26 550).  Plaintiff reiterated that the pain interfered with her sleep and
27 prevented her from holding objects.  (AR 550-51).

28

At the 2006 hearing, Plaintiff testified that she was able to perform work at the Ontario Montclair School District. (AR 418-19). At the 2008 hearing, Plaintiff testified that the work required her to provide translations and help with administrative tasks such as student enrollment and verifying attendance. (AR 554-55). Plaintiff testified that she attempted to return to work at Kaiser albeit with restrictions on her duties, but was subsequently terminated from employment there. (AR 431).

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

---

[2] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1520, 416.910.

7

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education and work

8

experience.  <u>Tackett</u>, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE.  <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

## THE ALJ'S DECISION

The ALJ found that Plaintiff meet the insured requirements of the Social Security Act through June 30, 2009.  (AR 450).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the now applicable closed period of disability from April 18, 2002 to May 5, 2005.  (AR 451).

At step two, the ALJ found Plaintiff's limitations as "right ulnar neuropathy, mild to moderate carpal tunnel syndrom, and mild to moderate cervical degeneration."  (AR 451).  The ALJ found that these limitations caused more than minimal restrictions on Plaintiff's ability to perform basic work related activities.  (<u>Id.</u>).  The ALJ concluded that Plaintiff had "severe" impairments within the meaning of the Social Security Act.  (<u>Id.</u>).

At step three, the ALJ found that Plaintiff's impairments did not equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (AR 451); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

1

2      At step four, the ALJ found that Plaintiff was unable to perform

3  any past relevant work.  (AR 455).  Plaintiff's history included work

4  as a data entry clerk and office entry clerk.  (<u>Id.</u>).  The ALJ found

5  that Plaintiff was unable to perform these tasks because the impairments

6  to her hands.  (<u>Id.</u>).

7

8      At step five, the ALJ found that Plaintiff could have performed

9  jobs that existed in significant numbers in the national economy.  (AR

10  455).  The ALJ posed the following limitations in a hypothetical to the

11  vocational expert ("VE"):

12

13         Consider   light   work   generally.     No   prolonged   or

14      repetitive typing or data input with both hands; no prolonged

15      or repetitive gripping or use of hand tools on a repetitive

16      basis; no prolonged or repetitive grasping or use of hand

17      tools on a repetitive basis.

18

19  (AR 557).

20

21      The VE noted that Plaintiff was able to perform the work she was

22  currently engaged in, which the VE categorized as interpreter and school

23  office clerk.  (AR 557).  The VE also testified that Plaintiff could

24  work as an information clerk, counter clerk, and a parking lot signaler.

25  (AR 557-58).

26

27

28

The ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> [T]o perform light work generally with lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting for six hours, and standing/walking for six hours in an eight hour day except she was precluded from prolonged or repetitive typing and data input with both hands, prolonged or repetitive grasping, or use of hand tools on a repetitive basis.

(AR 451).

Based on the above RFC and the testimony of the VE, the ALJ concluded that Plaintiff was not entitled to benefits.  (AR 456).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a

1   conclusion." <u>Id.</u>  To determine whether substantial evidence supports

2   a finding, the court must "'consider the record as a whole, weighing

3   both evidence that supports and evidence that detracts from the

4   [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny</u>

5   <u>v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can

6   reasonably support either affirming or reversing that conclusion, the

7   court may not substitute its judgment for that of the Commissioner.

8   <u>Reddick</u>, 157 F.3d at 720-21.

9

10                              **DISCUSSION**

11

12  **A.    As Plaintiff Could Perform The Jobs of Interpreter, School Office**

13         **Clerk And Parking Lot Signaler, The ALJ Properly Found Plaintiff**

14         **Not Disabled**

15

16       Residual functional capacity is what a claimant can still do

17  despite existing exertional and nonexertional limitations.  <u>Cooper v.</u>

18  <u>Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  SSR 96-8p provides

19  in relevant part: "RFC [residual functional capacity] is an assessment

20  of an individual's ability to do sustained work-related physical and

21  mental activities in a work setting on a regular and continuing basis."

22  SSR 96-8p, 1996 WL 374184, at *1 (SSA July 2, 1996). At Step 5, "[a]

23  'regular and continuing basis' means 8 hours a day, for 5 days a week,

24  or an equivalent work schedule." Id. at *2 (footnote omitted).  Light

25  work is defined as work involving "lifting no more than 20 pounds at a

26  time with frequent lifting or carrying of objects weighing up to 10

27  pounds" and requiring "a good deal of walking or standing" or "sitting

28

                                    12

most of the time with some pushing and pulling of arm or leg controls."
20 C.F.R. §§ 404.1567(b) and 416.967(b).

Here, the ALJ found the following RFC for Plaintiff:

[T]o perform light work generally with lifting and
carrying 20 pounds occasionally and 10 pounds frequently,
sitting for six hours, and standing/walking for six hours in
an eight hour day except she was precluded from prolonged or
repetitive typing and data input with both hands, prolonged
or repetitive grasping, or use of hand tools on a repetitive
basis.

(AR 451).

If, at step four, the claimant meets her burden of establishing an
inability to perform past work, the Commissioner must show that the
claimant can perform some other work that exists in "significant
numbers" in the national economy, taking into account the claimant's
residual functional capacity ("RFC"),[3] age, education and work
experience. Tackett, 180 F.3d at 1099-1100; Reddick, 157 F.3d at 721;
20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so
by the testimony of a vocational expert or by reference to the Medical-
Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,

---

[3] RFC is "the most [one] can still do despite [one's] limitations"
and represents an assessment "based on all the relevant evidence in
[one's] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

Here, the ALJ presented the following hypothetical to the VE that represented all of Plaintiff's limitations based upon the record:

> Consider light work generally.  No prolonged or repetitive typing or data input with both hands; no prolonged or repetitive gripping or use of hand tools on a repetitive basis; no prolonged or repetitive grasping or use of hand tools on a repetitive basis.

(AR 557).

The VE then testified that Plaintiff could perform work as an interpreter, a school office clerk, an information clerk, a counter clerk and a parking lot signaler.  (AR 557-58).  Based upon this testimony, the ALJ found that Plaintiff was not disabled because she could perform the work of receptionist and information clerk.  (AR 456).  The ALJ further noted that Plaintiff could perform her "current work activity as an interpreter for the school district and various other clerical duties considering the restrictions . . . previously noted herein."  (Id.) (internal citations omitted).

Plaintiff contends that "the ALJ's determination that Plaintiff could perform the jobs of information clerk and receptionist is inconsistent with Plaintiff's RFC." (Jt. Stip. at 4).  Plaintiff argues that the limitations found by the ALJ would prevent her from performing

14

these occupations as they are described in the Dictionary of Occupational Titles ("DOT").

In cases where the ALJ only considers positions contradicting the DOT, remand may be warranted. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (holding that an ALJ "may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation."); Light v. Social Security Administration, 119 F.3d 789 (9th Cir. 1997) (remanding where discrepancies between findings on residual functional capacity and DOT were not explained by the ALJ or the VE); Social Security Ruling 00-4p, 2000 WL 1898704 (finding that "[o]ccupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled").

Here, though, the ALJ did not solely rely upon positions contradicting the DOT. The ALJ also relied upon the VE's testimony that Plaintiff could perform the work of interpreter, school office clerk and parking lot signaler. (AR 557-558). In his decision, the ALJ explicitly noted that Plaintiff was able to perform the work of interpreter and school office clerk. (AR 456). Accordingly, the ALJ did not commit error because he identified jobs that the Plaintiff could perform based upon her RFC and the VE's testimony. Alternatively, if any error occurred, such error was harmless error because there existed

15

other jobs in the national economy that Plaintiff could perform.  <u>See</u> <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability); <u>Booz v. Sec'y of Health and Human Servs.</u>, 734 F.2d 1378, 1380-81 (9th Cir. 1984) (same).  Thus, the ALJ properly found that Plaintiff could perform as an interpreter and a school office clerk. No remand is required.

**B.   <u>The ALJ Provided Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Testimony</u>**

Plaintiff contends that the ALJ did not provide sufficient reasons for rejecting her subjective testimony.  This Court disagrees.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007)(citing <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991)(en banc))(internal quotation marks omitted).  The claimant, however, "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." <u>Id.</u> (quoting <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996)).

16

Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." <u>Smolen</u>, 80 F.3d at 1281.

The ALJ may consider the following factors when weighing the claimant's credibility: (1) her reputation for truthfulness; (2) inconsistencies either in her testimony or between her testimony and her conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002).

Plaintiff testified that she suffered from headaches that required her to lay down for periods of up to two hours, tension in her neck that required a cold ice pack and numbness and tingling in her hands. (AR 424-26).

The ALJ provided clear and convincing reasons for rejecting this testimony. The ALJ found that "the clinical signs typically associated were not consistently present on physical examinations." (AR 453). The ALJ noted that the record contained no indication that Plaintiff suffered from atrophy in her extremities or demonstrated persistent neurological deficits or inflammatory signs. (<u>Id.</u>). The ALJ found that Plaintiff's list of medications did not "reflect use of an inordinate amount of pain medication," and that Plaintiff had not complained of any side effects. (<u>Id.</u>; AR 393). The ALJ noted that "[Plaintiff] maintained good mobility in her spine and the joints throughout her

17

upper and lower extremities, and that she ambulated with a normal gait without the use of any assistive device." (AR 453; 321-22; 375-77). The ALJ highlighted inconsistencies between Plaintiff's limitations and her actual activities. (AR 453). The ALJ noted that the record indicates that Plaintiff's activities included "walking and taking her son to sports games; that she got her son ready for school; that she did dishes and things around her house; and that she did errands during the day." (AR 453; 396, 429). The ALJ contrasted this with Plaintiff's testimony that her impairments restricted her from spending time with her son and required her to lie down. (AR 453; 424, 432).

The ALJ found further inconsistencies within Plaintiff's testimony. (AR 453-54). At the 2006 hearing, Plaintiff testified that her headache pain required her to lay down. (AR 424). However, the record indicates that Plaintiff worked up to thirty hours a week as a substitute during this same period. (AR 394). The ALJ found that Plaintiff's testimony was not credible because "it is highly doubtful that lying down on the job would be tolerated by the claimant's employer." (AR 453). The ALJ further noted a "great discrepancy between the claimant's own assertions of her limitations and the findings of the two doctors in 2003 . . . that her limitations would allow for some range of work." (AR 454). The ALJ noted that both Dr. Patzakis and Dr. Sadler had only restricted Plaintiff from very heavy work and precluded her from prolonged and repetitive data entry, typing and grasping. (AR 454; 409; 180).

The ALJ provided multiple clear and convincing reasons for his decision to give less weight to Plaintiff's subjective evidence. The ALJ found repeated inconsistencies between Plaintiff's subjective

18

testimony and the record.  By highlighting such inconsistencies, the ALJ has adequately demonstrated that Plaintiff's credibility is suspect. Thus, the ALJ provided the clear and convincing reasons necessary to disregard such testimony.

**CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[4] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 19, 2009.

```
_____/s/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE
```

---

[4]   This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."